UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Harvey &
Melissa Harvey

    v.

Union Mutual Fire Insurance
Company

Civil No. 24-cv-244-LM-AJ
Opinion No. 2025 DNH 125 P

## O R D E R

Plaintiffs Richard and Melissa Harvey bring this action against defendant Union Mutual Fire Insurance Company ("Union Mutual"), alleging that Union Mutual wrongfully failed to pay amounts due and owing under the Harveys' homeowners' policy after a fire occurred at their home. Presently before the court is the Harveys' motions for leave to file an amended complaint (doc. no. 14) and to bar Union Mutual's demand for appraisal (doc. no. 15). Union Mutual objects to both motions. Doc. nos. 16 & 19. For the following reasons, the motion for leave to amend (doc. no. 14) is granted, but the appraisal motion (doc. no. 15) is denied.

## BACKGROUND

The Harveys' home caught fire on July 4, 2022, causing substantial damage. They submitted a timely claim to Union Mutual and began working with Union Mutual's designated adjuster, John Fraser of Fraser Insurance Services.

The homeowners' policy issued by Union Mutual to the Harveys provided several forms of coverage, including for:

- Damage to the dwelling (Coverage A), with a stated limit of $457,000;

- Damage to "other structures" (Coverage B), with a stated limit of $45,700;

- Damage to personal property (Coverage C), with a stated limit of $342,750; and

- Loss of use (Coverage D), with a stated limit of $137,100.

The policy also provided coverage for damage to trees, shrubs, and plants.

During the adjustment process, Union Mutual determined that the "Actual Cash Value loss" caused by the dwelling damage was $478,085.39. Because this figure exceeded the stated limit in Coverage A ($457,000), Union Mutual tendered payment to the Harveys in the amount of that coverage limit. However, under a policy endorsement, Union Mutual is required to add the Coverage B limit ($45,700) to the Coverage A limit "[i]f there is no detached structure with a replacement cost exceeding $1,000." Doc. no. 14-1 at 3. Union Mutual did not do so, claiming that the home was not a "total loss" and that a stone wall on the property constituted an "other structure" under Coverage B.

The Harveys also made a claim under Coverage D for loss of use of the dwelling, which provides coverage for living expenses during times when the residence is not fit to live in. The policy provides that payments shall be "for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere." Id. at 6. Union Mutual initially made monthly payments of $6,000 to the Harveys under Coverage D. The Harveys were unable to secure replacement housing between July

2022 and June 2023 due to shortages in housing supply, their inability to qualify for a mortgage, and Mrs. Harvey's serious medical issues.[1] They were in communication with Union Mutual and Fraser about these difficulties. However, on June 28, 2023, Fraser advised the Harveys that Union Mutual was discontinuing payments under Coverage D because it determined that twelve months was "a sufficient time for [the Harveys] to have repaired or replaced the fire damage." Id. at 7. Although Union Mutual thereafter made two additional monthly payments at Mr. Harvey's urging, they have refused to make further payments beyond those two. Union Mutual ultimately made payments totaling $84,000 to the Harveys under Coverage D, which is less than the coverage limit set forth therein ($137,100).

After retaining counsel in September 2023 and unsuccessfully attempting to reach a pre-suit negotiated resolution with Union Mutual, the Harveys brought this action in Hillsborough County Superior Court in July 2024. The Harveys state that they did so in part "to protect the statute of limitations," doc. no. 21 at 3, and that they had a "good faith belief that the case might settle" at mediation following institution of suit, doc. no. 14-2 at 3. Among other things, the original complaint alleges that Union Mutual wrongfully failed to apply Coverage B's stated limit to Coverage A's stated limit and wrongfully ceased tendering monthly payments for the Harveys' living expenses under Coverage D. The complaint also seeks payment under the policy's coverage for damage to trees, shrubs, and plants. The complaint

---

[1] Mrs. Harvey was undergoing treatment for stage four cancer during this time.

contains one cause of action for breach of contract and one cause of action for "declaratory judgment." Doc. no. 1-2 at 13.

Union Mutual removed the Harveys' action to this court in August 2024. The parties agreed to exchange only written discovery in anticipation of potentially reaching a mediated settlement. On March 10, 2025, Union Mutual produced some or all of its claim file. The Harveys believed that certain information contained in the claim file supported an additional claim that Union Mutual's coverage denials were in bad faith. For example, although Union Mutual refused to add Coverage B's stated limit to Coverage A's stated limit on the basis that the home was not a "total loss," the claim file showed that Union Mutual's claim handler described the home as "nearly a constructive total loss" within days of the fire. Doc. no. 14-1 at 8. In addition, the Harveys contend that the claim file shows that Union Mutual did not conduct an analysis of what would constitute a "sufficient" time to secure replacement housing for purposes of loss-of-use payments under Coverage D, but instead simply assumed that a twelve-month period would be sufficient.

Although the Harveys believed these new facts supported an additional claim, they state that they did not immediately seek to amend the complaint because they thought the case might settle at mediation. The parties mediated over the course of two days on April 25 and June 13, 2025. The case did not settle at mediation.

The Harveys filed the instant motion for leave to amend on July 3, 2025. Doc. no. 14. The amended complaint seeks to add a cause of action for "bad faith breach

4

of insurance contract" and to supplement the Harveys' factual allegations with information disclosed in March 2025 from Union Mutual's claim file. Doc. no. 14-1 at 8-13.

Meanwhile, on June 16, 2025 (three days after mediation failed), Union Mutual demanded that the Harveys submit their insurance claims for living expenses and lost trees and shrubs to an "appraisal" process set forth in the policy. The Harveys' filed the instant motion to bar Union Mutual's demand for appraisal on July 11, 2025. Doc. no. 15.

## DISCUSSION

I.   Motion for Leave to Amend (doc. no. 14)

Where, as here, a plaintiff seeks to file an amended complaint after the deadline for amended pleadings set forth in the scheduling order has passed, the plaintiff must satisfy Rule 16(b)'s "good cause" standard, rather than Rule 15(a)'s more liberal "freely given" standard.[2] Baez v. Baymark Detoxification Servs., Inc., 123 F.4th 62, 67 (1st Cir. 2024) (quoting United States ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 192 (1st Cir. 2015)). "The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." Miceli v. JetBlue Airways Corp., 914 F.3d 73, 86 (1st Cir. 2019). Good cause may exist when new material facts emerge or are discovered in the case that could not

---

[2] The parties assert that Rule 15(a) applies to the Harveys' motion. However, the deadline for the Harveys to amend pleadings was December 2, 2024, and that deadline has never been extended. See doc. nos. 8, 9.

5

reasonably have been discovered earlier. Doe v. Comm'r, N.H. Dep't of Health & Hum. Servs., 344 F.R.D. 57, 64 (D.N.H. 2023). Good cause may be lacking when leave is sought only after "protracted delay," especially when the plaintiff's delay "burdens . . . the opponent and the court." Miceli, 914 F.3d at 86. A district court has broad discretion to grant or deny leave to amend under this standard. O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004).

 Here, there is good cause to amend. The Harveys learned of the facts underlying their bad faith claim only after Union Mutual produced its claim file in discovery. Rather than immediately seek to amend, the Harveys attempted to settle the case at mediation. Once it became clear that the case was unlikely to settle at mediation, the Harveys timely filed the instant motion to amend. And the court can discern no prejudice to Union Mutual if leave to amend is granted. Indeed, Union Mutual does not claim that it would be prejudiced by amendment.

 Union Mutual does contend that the court should deny the Harveys' motion on the ground that New Hampshire law does not recognize a cause of action for bad faith breach of an insurance contract. In support of that contention, Union Mutual cites to Lawton v. Great Southwest Fire Insurance Co., 118 N.H. 607, 614 (1978), where the New Hampshire Supreme Court held "that allegations of an insurer's wrongful refusal or delay to settle a first-party claim do not state a cause of action in tort."

 Union Mutual is correct that New Hampshire does not "recognize a <u>tort</u> claim for bad faith delay or refusal to settle a first-party insurance claim." Bell v. Liberty

6

Mut. Ins. Co., 146 N.H. 190, 195 (2001) (emphasis added). But the Harveys do not seek to bring a tort claim; they seek to bring an additional claim sounding in contract. In Lawton, the New Hampshire Supreme Court recognized that, where a plaintiff plausibly alleges that the defendant insurer "fail[ed] to make prompt payment under [an insurance policy] to coerce the insured into accepting less than full performance of the insurer's contractual obligations," the plaintiff has stated a claim for breach of the covenant of good faith and fair dealing that is "implied in every contract." 118 N.H. at 612. Success on such a claim permits the insured to seek an award of consequential damages resulting from the defendant insurer's bad faith breach in addition to the wrongfully withheld insurance proceeds. Id. at 612-13; accord Bennett v. ITT Hartford Grp., Inc., 150 N.H. 753, 757 (2004) ("[T]he damages recoverable for an insurer's breach of a contractual obligation of good faith and fair dealing may exceed the amount the insurer would have had to pay in the performance of the contract."); Jarvis v. Prudential Ins. Co. of Am., 122 N.H. 648, 653 (1982) (same).

To the extent Union Mutual argues that the Harveys' proposed bad faith claim is duplicative of their breach of contract claim, Union Mutual is incorrect. This court has recognized that New Hampshire law permits a plaintiff to bring a cause of action for breach of the implied covenant of good faith and fair dealing separate from a claim for breach of the contract into which that covenant is implied. See Balsamo v. Univ. Sys. of N.H., Civ. No. 10-cv-500-PB, 2011 WL 4566111, at *4 (D.N.H. Sept. 30, 2011). Here, where the factual allegations underlying the

Harveys' proposed bad faith claim "go beyond the statement of a mere contract breach," and the bad faith claim seeks additional damages, a separate bad faith claim may be properly pled. Id. (quoting Hall v. EarthLink Network, Inc., 396 F.3d 500, 508 (2d Cir. 2005)).

For these reasons, the court concludes that New Hampshire law recognizes a distinct cause of action for bad faith breach of an insurance contract, insofar as it recognizes a claim for breach of the implied covenant of good faith and fair dealing contained in every insurance contract. As Union Mutual raises no other arguments in opposition to the Harveys' motion to amend, the court finds good cause to amend.

II.     Motion to Bar Demand for Appraisal (doc. no. 15)

New Hampshire law requires homeowners' fire insurance policies to contain an appraisal provision conforming to the appraisal provision set forth in the standard fire insurance policy adopted by the legislature. RSA 407:2, :22; see Lawton, 118 N.H. at 614. The parties' insurance policy contains such an appraisal provision. Specifically, the parties' appraisal provision provides in pertinent part:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree on an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the

>umpire. A decision agreed to by any two will set the amount
>of loss.

Doc. no. 15-2 at 1; see also RSA 407:22 (setting forth a materially similar appraisal provision).

The parties agree that "[c]ourts almost universally endorse the efficiency and efficacy of the appraisal process." Doc. no. 15-1 at 3; accord doc. no. 19 at 4. Unlike arbitration, "[a]n appraisal process can only resolve the disputed amount of a covered loss, not broader issues of liability." Zurich Am. Ins. Co. v. Omni Health Sols., LLC, 774 S.E.2d 782, 784 n.1 (Ga. Ct. App. 2015). The appraisal process leaves "the general question of liability to be judicially determined, and simply provid[es] a reasonable method of estimating and ascertaining the amount of the loss." Musto v. Liberty Ins. Corp., No. 1:20-cv-00188-GZS, 2021 WL 5501765, at *6 (D. Me. Nov. 21, 2021) (quoting Hamilton v. Liverpool & London & Globe Ins. Co., 136 U.S. 242, 255 (1890)), R&R approved, 2022 WL 103716, at *1 (D. Me. Jan. 11, 2022). In addition, appraisal is usually efficient and cost-effective: "Appraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings. It would be a rare case in which appraisal could not be completed with less time and expense than it would take to file motions contesting it." State Farm Lloyds v. Johnson, 290 S.W.3d 886, 894 (Tex. 2009); accord Musto, 2021 WL 550176, at *6 (highlighting that appraisal provides "a speedy method of determining the loss by an impartial tribunal which might view the property, hear the parties, and without being hampered by the strict rules of court procedure, adjust the question most

9

often in dispute between the parties" (quoting Oakes v. Franklin Fire Ins. Co., 120 A. 53, 55 (Me. 1923))).

Here, as noted, Union Mutual invoked this appraisal provision as to the Harveys' claims for living expenses and trees and shrubs on June 16, 2025, three days after mediation unsuccessfully concluded. The Harveys seek a ruling from this court that Union Mutual is barred from invoking the appraisal clause on the ground that Union Mutual failed to timely seek appraisal. In the alternative, the Harveys argue that Union Mutual has waived its right to trigger appraisal.

The parties agree that this issue is governed by New Hampshire law. However, it does not appear that the New Hampshire Supreme Court has had occasion to consider the circumstances in which a party to an insurance contract may be precluded from invoking an appraisal clause on grounds of timeliness or waiver. Because the New Hampshire Supreme Court "has not spoken directly on the question of state law at issue," this court "must predict how that court likely would decide the issue." R.I. Truck Ctr., LLC v. Daimler Trucks N. Am., LLC, 92 F.4th 330, 349 (1st Cir. 2024) (brackets omitted) (quoting Barton v. Clancy, 632 F.3d 9, 17 (1st Cir. 2011)); accord Bourgeois v. TJX Cos., Inc., 129 F.4th 28, 33 (1st Cir. 2025). This prediction may be based on "analogous decisions" from the New Hampshire Supreme Court "and other reliable sources such as the decisions of other courts and commentary in treatises." Jenks v. N.H. Motor Speedway, Civ. No. 09-cv-205-JD, 2012 WL 1393977, at *1 (D.N.H. Apr. 23, 2012).

With respect to the Harveys' timeliness argument, the time within which a party to an insurance policy must exercise its contractual right to demand appraisal is controlled in the first instance by the language of the contract. See Citizens Prop. Ins. Corp. v. Casar, 104 So. 3d 384, 385-86 (Fla. Dist. Ct. App. 2013) ("Appraisals are creatures of contract. What is appraised and whether a party can be compelled to appraisal depend on the contract provisions." (citations omitted)). Here, while the appraisal provision contemplates that the parties must have "fail[ed] to agree on the amount of loss" before a party may invoke appraisal of that amount, it contains no limitations as to when appraisal must be invoked thereafter. Doc. no. 15-2 at 1. When an appraisal provision contains no express timeliness requirement, courts have generally held that "the right to require an appraisal 'is not indefinite as to time, but must be exercised within a reasonable period.'"[3] Amerex Grp., Inc. v. Lexington Ins. Co., 678 F.3d 193, 199 (2d Cir. 2012) (quoting Chainless Cycle Mfg. Co. v. Sec. Ins. Co., 62 N.E. 392, 394 (N.Y. 1901)); see id. at 202 (collecting cases employing a similar "flexible approach"). In determining whether an appraisal demand was made within a reasonable period, courts may consider a variety of circumstances, including "the time between the breakdown of good faith

---

[3] The court may resolve "the timeliness of the demand" as a matter of law in an order on a pretrial motion. Keesling v. W. Fire Ins. Co., 520 P.2d 622, 628 (Wash. Ct. App. 1974). While timeliness is ordinarily a question of fact, see Hanby v. Md. Cas. Co., 265 A.2d 28, 31 (Del. 1970), the court may determine the timeliness of a demand for appraisal "as a matter of practicality, because the question arises at the preliminary stages of litigation" and concerns a party's right to avoid a trial on the disputed amount of a loss. Terra Indus., Inc. v. Commonwealth Ins. Co. of Am., 981 F. Supp. 581, 602 (N.D. Iowa 1997).

11

negotiations concerning the amount of the loss suffered by the insured and the appraisal demand" and "whether there would be any prejudice to the other party resulting from the delay in demanding an appraisal." Terra Indus., Inc. v. Commonwealth Ins. Co. of Am., 981 F. Supp. 581, 602 (N.D. Iowa 1997). A reasonable period in which to invoke appraisal may encompass a period of time after litigation has commenced, depending on the circumstances. See id. at 600; 15 Jordan R. Plitt et al., Couch on Insurance § 210:77 (3d ed.).

  Here, although the Harveys' claims concern a fire that occurred in July 2022 and this action has been pending since July 2024, the Harveys state they filed suit at that time "to protect the statute of limitations," doc. no. 21 at 3, and that they had a "good faith belief that the case might settle" thereafter at mediation, doc. no. 14-2 at 3. After commencement of this action, the parties agreed to hold depositions, retention of experts, and motion practice in abeyance pending mediation. Indeed, the Harveys themselves declined to seek amendment of the complaint to add their bad faith claim after production of Union Mutual's case file in March 2025 because of their belief that settlement was a realistic possibility. Thus, little litigation occurred in this case from July 2024 through the second mediation session on June 13, 2025. The parties, however, "fail[ed] to agree on the amount of loss" at mediation. Doc. no. 15-2 at 1. Three days later, Union Mutual demanded appraisal of the Harveys' claims for living expenses and trees and shrubs. In these circumstances, Union Mutual demanded appraisal within a reasonable period of time following "the breakdown of good faith negotiations." Terra Indus., 981 F.

Supp. at 602; see, e.g., Hanby, 265 A.2d at 29, 31 (demand for appraisal made within reasonable period despite occurring after commencement of litigation when demand made within two months after negotiations broke down); Sch. Dist. No. 1 of Silver Bow Cnty. v. Globe & Republic Ins. Co. of Am., 404 P.2d 889, 891-93 (Mont. 1965) (demand for appraisal made within reasonable period when made within a week of commencement of litigation and "at all times prior to [institution of] this suit the parties were engaged in good-faith negotiations").

In arguing to the contrary, the Harveys place substantial weight on Lynch v. American Family Mutual Insurance Co., 473 N.W.2d 515 (Wis. Ct. App. 1991). There, the Wisconsin Court of Appeals held that "an insurance company may not demand an appraisal of a loss after the commencement of an action by the insured on that loss when the insurance company failed to demand the appraisal prior to the lawsuit even though it had an opportunity to do so." Lynch, 473 N.W.2d at 517. However, "the Lynch court's rigid rule is in the minority."[4] Amerex Grp., 678 F.3d at 201. The majority rule is that "institution of suit by the insured [does not] serve[ ]

---

[4] Lynch itself substantially relies on the Seventh Circuit's opinion in Hayes v. Allstate Insurance Co., 722 F.2d 1332 (7th Cir. 1983). There, the Seventh Circuit held under Indiana law that a demand for appraisal made after institution of the insured's civil action was ineffective where the insurance policy did not expressly provide that completion of appraisal was a condition precedent to the insured's ability to file suit. Hayes, 722 F.2d at 1335-36. However, the Indiana Court of Appeals subsequently held that an insurer's demand for appraisal made after commencement of suit was effective because there was no evidence the insured would be prejudiced by appraisal, even though negotiations had broken down more than six months before the appraisal demand. Monroe Guar. Ins. Co. v. Backstage, Inc., 537 N.E.2d 528, 528-29 (Ind. Ct. App. 1989). Thus, Hayes is now "out of step" with Indiana decisional law. Terra Indus., 981 F. Supp. at 600.

13

to cut off the insurer's right to demand appraisal," and that "the inconvenience of bringing suit is just one circumstance to be considered in determining whether a delay in demanding appraisal was unreasonable." Sch. Dist. No. 1, 404 P.2d at 893; see Terra Indus., 981 F. Supp. at 600 (noting "the holdings of . . . many courts that, even when suit has been filed, the question is whether a subsequent appraisal demand has been made within a reasonable time of reaching impasse"). Under Lynch's minority rule, an insured can unilaterally prevent an insurer from exercising its contractual right to appraisal by filing suit immediately after experiencing a loss potentially covered by the policy. Terra Indus., 981 F. Supp. at 600. Given New Hampshire's longstanding public policy in favor of "the speedy adjustment and payment of losses" and the removal of "technical and inequitable" barriers to coverage, while "at the same time protect[ing] insurers from fraudulent claims and vexatious suits," this court does not predict that the New Hampshire Supreme Court would join Lynch atop its lonely perch. Franklin v. N.H. Fire Ins. Co., 70 N.H. 251, 258 (1900).

      The Harveys also argue that the appraisal clause is ambiguous as to when a party must seek appraisal, and that this ambiguity should be construed against Union Mutual and in favor of the conclusion that institution of this action precludes Union Mutual from demanding appraisal. The New Hampshire Supreme Court considers language in an insurance policy to be ambiguous when the "policy's language is reasonably susceptible of more than one interpretation . . . and one reasonable interpretation favors coverage." Exeter Hosp., Inc. v. Steadfast Ins. Co.,

14

170 N.H. 170, 174 (2017). In those circumstances, the Court will "construe the ambiguity against the insurer and in favor of coverage in order to honor the reasonable expectation of the policyholder."[5] Id. At the same time, the New Hampshire Supreme Court "will not perform amazing feats of linguistic gymnastics to find a purported ambiguity simply to construe the policy against the insurer and create coverage where it is clear that none was intended." Keene Auto Body, Inc. v. State Farm Mut. Auto. Ins. Co., 175 N.H. 503, 507 (2022) (quoting Bartlett v. Com. Ins. Co., 167 N.H. 521, 531 (2015)).

    Here, the policy is not ambiguous as to when a demand for appraisal must be made following a failure to agree on the amount of a loss; it is simply silent as to that issue. See Dow Assocs. v. Gulf Oil Corp., 114 N.H. 381, 383 (1974) (lease agreement that did not state which party was responsible for payment of certain utilities was "not ambiguous" as to who was responsible for those utilities; it was "simply silent with regard to these obligations"). "Although the policy is silent as to whether suit preempts appraisal, such silence does not necessarily amount to ambiguity." Terra Indus., 981 F. Supp. at 598. In the statutory interpretation context, the Supreme Court has "never held that silence necessarily renders a

---

[5] It is questionable whether this interpretive canon applies in the context of ascertaining a party's contractual right to invoke appraisal, insofar as appraisal does not resolve issues of coverage but rather only the amount of a loss which may or may not be covered. Plitt et al., supra § 210:42.

statute ambiguous."[6] State v. Surrell, 171 N.H. 82, 87 (2018). Rather than creating an ambiguity, contractual silence as to when appraisal must be demanded begets the inference "that the parties contemplated that such demand must be made within a reasonable time after disagreement has arisen as to the amount of loss." Sch. Dist. No. 1, 404 P.2d at 893; see also Surrell, 171 N.H. at 87 (observing that "silence [may] reflect . . . intent that the trial court should have discretion over the determination at issue"). Because the appraisal clause is silent as to when appraisal must be demanded after a failure to agree on the amount of a loss, the court declines the Harveys' invitation to fill that silence with Lynch's inflexible minority rule. See Cole v. Combined Ins. Co. of Am., 125 N.H. 395, 396 (1984) (Souter, J.) ("The definitional issues before us arise not from any ambiguity of the contract, but from its silence. Our obligation, therefore, is to supply reasonable definitions.").

For these reasons, the court concludes that Union Mutual's demand for appraisal was made within a reasonable period following the breakdown of good-faith negotiations. As the Harveys have not identified any manner in which they would be prejudiced by appraisal of their loss-of-use claim or their claim for trees and shrubs, the court concludes that Union Mutual's demand for appraisal is timely.

---

[6] Application of this interpretive canon is especially appropriate with respect to an appraisal clause in a fire insurance policy, since the terms of such a clause "are prescribed by statute," i.e., New Hampshire's standard fire insurance policy as set forth by the legislature in RSA 407:22. Terra Indus., 981 F. Supp. at 599 n.12.

In the alternative to their timeliness argument, the Harveys assert that Union Mutual has impliedly waived its contractual right to appraisal. "[W]aiver is the voluntary or intentional abandonment or relinquishment of a known right." Priv. Jet Servs. Grp., LLC v. Tauck, Inc., 176 N.H. 553, 557-58 (2024). "A waiver may be based upon an intention expressed in explicit language or upon conduct under the circumstances justifying an inference of a relinquishment of a known right." Id. at 558. Here, the Harveys assert that Union Mutual's conduct justifies an inference that Union Mutual relinquished its right to demand appraisal.

The court disagrees. On January 30, 2024, counsel for the Harveys sent a demand letter to Union Mutual and a request for clarification regarding Union Mutual's position on coverage. See doc. no. 15-3. In response, Union Mutual, through counsel, sent a letter on March 5, 2024 "expressly reserv[ing] all" rights under the policy, and specifically reserved its rights under the appraisal clause. Doc. no. 15-4 at 3. Once the parties failed to reach agreement on the amount of loss at the second mediation session on June 13, 2025, Union Mutual invoked its right to demand appraisal three days later. In these circumstances, the court cannot conclude as a matter of law that Union Mutual's conduct justifies an inference that Union Mutual intentionally abandoned its right to appraisal. See Tothill v. Richey Ins. Agency, Inc., 117 N.H. 449, 453-54 (1977) (employer did not waive right to compel arbitration by defending against employee's civil action where employer "repeatedly and consistently asserted its right to arbitrate," the employer did not

17

"allow the case to go to the merits," and "the purpose of discovery was to ascertain the plaintiff's assets, not to prepare for a trial on the merits").

## CONCLUSION

The motion for leave to file an amended complaint (doc. no. 14) is granted. Within 48 hours, the Harveys shall file their proposed amended complaint attached to their motion (doc. no. 14-1) using the appropriate event in CM/ECF. The motion to bar Union Mutual's demand for appraisal (doc. no. 15) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 15, 2025

cc:   Counsel of Record