UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Harvey &
Melissa Harvey

      v.                                    Civil No. 24-cv-244-LM-AJ
                                                        Opinion No. 2026 DNH 002 P

Union Mutual Fire Insurance
Company

**O R D E R**

    Plaintiffs Richard and Melissa Harvey bring this action against defendant

Union Mutual Fire Insurance Company ("Union Mutual"), alleging that Union

Mutual wrongfully failed to pay amounts due and owing under the Harveys'

homeowners' policy after a fire occurred at their home. Presently before the court is

Union Mutual's motion for partial summary judgment. Doc. no. 22. The Harveys

object. Doc. no. 25. For the following reasons, Union Mutual's motion (doc. no. 22) is

granted in part and denied in part.

**STANDARD OF REVIEW**

    A movant is entitled to summary judgment where he "shows that there is no

genuine dispute as to any material fact and [that he] is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if "the evidence

is such 'that a reasonable jury could resolve the point in favor of the nonmoving

party.'" Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 7 (1st Cir. 2025)

(quoting Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018)). A fact is

"material" if it has the "potential to affect the outcome of the suit under the applicable law." Id. (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Minturn v. Monrad, 64 F.4th 9, 14 (1st Cir. 2023).

## BACKGROUND

The following facts are not in dispute. The Harveys' home caught fire on July 4, 2022, causing substantial damage. At the time of the fire, the Harveys had a homeowners' policy with Union Mutual. The homeowners' policy provided several forms of coverage, including for:

- Damage to the dwelling (Coverage A), with a stated limit of $457,000;

- Damage to "other structures" (Coverage B), with a stated limit of $45,700; and

- Damage to personal property (Coverage C), with a stated limit of $342,750.

Doc. no. 22-2 at 1. The Harveys' deductible was $500.

During the adjustment process, Union Mutual determined that the "Actual Cash Value loss" caused by the dwelling damage was $478,085.39. Because this figure exceeded the stated limit in Coverage A ($457,000), Union Mutual tendered payment to the Harveys in the amount of that coverage limit. However, under a policy endorsement, Union Mutual is required to add the Coverage B limit for "other structures" ($45,700) to the Coverage A limit "[i]f there is no detached structure with a replacement cost exceeding $1,000." Doc. no. 22-2 at 65.

Union Mutual declined to add the Coverage B limit to the Coverage A limit on the basis that a stone wall on the property was a "detached structure with a replacement cost exceeding $1,000."[1] Id. Mr. Harvey, who previously worked in construction, constructed the stone wall himself using a Kubota tractor and large field stones he gathered from around the property. Mr. Harvey testified at his deposition that there were two large stones that were already present in the landscaping, and he added additional stones around them to create the wall. He also built stairs into the wall using field stones, and partially backfilled behind the wall after he constructed it. It took approximately twenty hours over the course of multiple weekends for Mr. Harvey to build the wall and stairs.

The Harveys also made a claim under Coverage C for loss of personal property. Specifically, they sought payment for the replacement cost of certain individual items of personal property valued at less than $500 even though they had not yet replaced those items. Union Mutual has denied the Harveys' request, citing a policy endorsement which provides that, "[i]f the cost to repair or replace the property [subject to Coverage C] is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete." Id. at 47.

The Harveys thereafter instituted this action. The operative complaint brings three claims:

---

[1] Neither party asserts that the stone wall was damaged in the fire.

- Count I: Breach of contract;
- Count II: "Declaratory Judgment,"[2] doc. no. 24 at 11; and
- Count III: "Bad Faith Breach of Insurance Contract,"[3] id.

With respect to Count I, the Harveys allege that Union Mutual breached its contractual obligations by, inter alia, refusing to add the Coverage B limit to the Coverage A limit and by refusing to pay the replacement cost for items of personal property valued at less than $500 prior to the items' replacement.

Presently before the court is Union Mutual's motion for partial summary judgment. Union Mutual contends that there is no genuine dispute of material fact that (1) the stone wall on the Harveys' property is a "detached structure with a replacement cost exceeding $1,000," and (2) the policy does not provide coverage for the replacement cost of individual items of personal property valued under $500 prior to such items' replacement. According to Union Mutual, because there is no genuine dispute of material fact as to these issues, it is entitled to judgment as a matter of law with respect to Count I to the extent that Count relies upon the theories that Union Mutual breached its contractual obligations by failing to add

---

[2] This matter was removed from New Hampshire state court. New Hampshire law permits a party to an insurance contract to bring a declaratory judgment action in certain circumstances to determine the scope of the policy's coverage. See RSA 491:22, I, III.

[3] In ruling on the Harveys' motion to amend their complaint, this court ruled that New Hampshire law recognizes a claim "for bad faith breach of an insurance contract, insofar as it recognizes a claim for breach of the implied covenant of good faith and fair dealing contained in every insurance contract." Harvey v. Union Mut. Fire Ins. Co., Civ. No. 24-cv-244-LM-AJ, 2025 WL 2938790, at *3 (D.N.H. Oct. 15, 2025).

the Coverage B limit to Coverage A and by failing to immediately pay the replacement cost for items of personal property valued at less than $500. Moreover, Union Mutual asserts that, because these are the only two coverage issues remaining in this case, it is entitled to judgment as matter of law with respect to Count II.

## DISCUSSION

The court will first address Union Mutual's argument that there is no genuine dispute of material fact that Union Mutual did not breach its contractual obligations by declining to increase the Coverage A limit on the basis of the stone wall's presence on the property. Then, the court will consider whether the policy provides coverage for the replacement cost of individual pieces of personal property with a value under $500 prior to such items' replacement.

I.    There Is No Genuine Dispute of Material Fact that the Stone Wall Is a "Detached Structure" Within the Meaning of the Policy

The parties agree that the replacement cost for the stone wall exceeds $1,000. Thus, their dispute regarding the stone wall turns on whether the wall is a "detached structure" within the meaning of the policy. Union Mutual contends that the plain meaning of "structure" includes anything that is constructed, and asserts that Mr. Harvey constructed the stone wall such that the stone wall is an "other structure" covered under Coverage B. Union Mutual asserts that, because there is a "detached structure with a replacement cost exceeding $1,000" on the property, there is no genuine dispute of material fact that Union Mutual did not breach its

5

contractual obligations by failing to add the coverage limit for "other structures" to the coverage limit for the Harveys' dwelling. The Harveys disagree, claiming that the policy is ambiguous as to what constitutes a "structure" and that this ambiguity must be construed against the insurer and in favor of coverage.

Under New Hampshire law,[4] the proper interpretation of an insurance policy is a question of law. Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Co., 175 N.H. 744, 750 (2023). The court's goal in interpreting an insurance policy is to effectuate the contracting parties' intent. Id. To determine the parties' intent, the court "look[s] to the plain and ordinary meaning of the policy's words in context." Id. The policy's terms will be construed "as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole." Id. This is an objective standard. Id.

When policy terms "are clear and unambiguous," they will be given their "natural and ordinary meaning." CC 145 Main, LLC v. Union Mut. Fire Ins. Co., 176 N.H. 97, 99 (2023). However, if policy terms are ambiguous, they will be construed in favor of coverage. Id. at 100. A policy term is ambiguous if it is susceptible to more than one reasonable interpretation. Id. Mere disagreement as to the proper interpretation of policy language does not demonstrate that the language is ambiguous. Id. "For an ambiguity to exist, the disagreement must be reasonable." Id. And, while ambiguous terms will be construed in favor of coverage, a court may

---

[4] The parties agree that the Harveys' claims are governed by New Hampshire law.

not "perform amazing feats of linguistic gymnastics to find a purported ambiguity simply to construe the policy against the insurer and create coverage where it is clear that none was intended." Id. (quoting Bartlett v. Commerce Ins. Co., 167 N.H. 521, 531 (2015)).

Looking to the language of the policy, Coverage A of the policy covers the "dwelling," and Coverage B covers "other structures." Doc. no. 22-2 at 1. The declarations page states that the coverage limit for damage to the dwelling is $457,000, and that the coverage limit for damage to "other structures" is $45,700. However, as noted, a policy endorsement provides: "If there is no detached structure with a replacement cost exceeding $1,000, [the insurer] will add the Coverage B limit to Coverage A – Dwelling limit shown on the Declarations of this policy. This new amount is the limit of Coverage A – Dwelling." Id. at 65. The policy does not define "detached structure," "other structures," or "structure."

Because these phrases are undefined, the court must determine their "plain and ordinary" meaning, in the context of the policy as a whole. Schleicher & Stebbins, 175 N.H. at 750. In so doing, the court may consult dictionaries for guidance. Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 151 N.H. 649, 654 (2005); accord Hunt v. Golden Rule Ins. Co., Civ. No. 09-cv-51-PB, 2010 WL 1794838, at *3 (D.N.H. May 5, 2010). The definition of "structure" is "something (such as a building) that is constructed." Structure, Merriam-Webster, https://www.merriam-webster.com/dictionary/structure (last visited Jan. 8, 2026). Examples include a "building, bridge, or dam." Structure, Dictionary.com,

https://www.dictionary.com/browse/structure (last visited Jan. 8, 2026). And the
definition of "detached" is "standing by itself: separate, unconnected." <u>Detached</u>,
Merriam-Webster, https://www.merriam-webster.com/dictionary/detached (last
visited Jan. 8, 2026). It is undisputed that Mr. Harvey constructed the stone wall
using a farm tractor over the course of multiple weekends. Moreover, it is
undisputed that the stone wall is unconnected to the dwelling. Thus, a plain reading
of this language would lead a reasonable insured to understand that the stone wall
is a "detached structure" within the meaning of the policy.

This interpretation is consistent with the context in which this policy
language appears. As noted, Coverage A of the policy provides coverage for damage
to the Harveys' "dwelling," and Coverage B provides coverage for the Harveys'
"other structures." Doc. no. 22-2 at 1. Specifically, Coverage A states that its policy
limit covers damage to the Harveys' dwelling, "including structures attached to the
dwelling." <u>Id.</u> at 11. Coverage B "cover[s] other structures" on the property "set
apart from the dwelling by clear space," including detached structures "connected to
the dwelling by only a fence, utility line, or similar connection." <u>Id.</u> Courts routinely
find that similar homeowners' coverage for "other structures" broadly includes
things that have been constructed on an insured's property. <u>See, e.g.</u>, <u>Aquino v.
United Prop. & Cas. Co.</u>, 143 N.E.3d 379, 396 (Mass. 2020) ("[T]he driveway is a
separate structure that falls under the purview of Coverage B."); <u>Jones v. Allstate
Prop. & Cas. Ins. Co.</u>, 552 F. Supp. 3d 498, 502 (E.D. Pa. 2021) ("[I]t is difficult to
conceive how a fence could be categorized as anything other than some type of

structure."); Porco v. Lexington Ins. Co., 679 F. Supp. 2d 432, 439 (S.D.N.Y. 2009) (swimming pool was an "other structure"). Thus, if the Harveys' stone wall had been damaged in the fire, coverage for such a loss would be available under Coverage B.

The at-issue endorsement provides that, if the property does not contain a "detached structure,"—i.e., if it does not contain a structure which, if damaged, could give rise to a claim under Coverage B—then Union Mutual will increase the coverage limit for Coverage A by the amount of the Coverage B limit. In other words, because the coverage available under Coverage B will go unused, the insured receives the benefit of Coverage B by virtue of its coverage limit being added to the Coverage A limit. Based on the language of the policy and its context, the intent of this endorsement is to provide the insured with additional coverage for his dwelling when there is no possibility of a legitimate claim for a loss sustained by an "other structure." See Keene Auto Body, Inc. v. State Farm Mut. Auto. Ins. Co., 175 N.H. 503, 508 (2022) (explaining that a court interpreting policy language should "giv[e] consideration to its purpose").

The Harveys contend that "structure" may be reasonably construed to embrace only buildings. They point out that Coverage B states that coverage does not extend to other structures which are "rented or held for rental" or used for "business" purposes or to "store business property." Doc. no. 22-2 at 11. Based on these exclusions from coverage, the Harveys assert that a reasonable insured would understand that an "other structure" includes structures which are capable of being

rented or used for business or storage purposes, but not structures which are not so capable.

The court does not find that "structure," as used in the policy, may be reasonably construed to embrace only buildings. While Coverage B makes clear that buildings are structures, that does not necessarily mean that only buildings are structures. Elsewhere in the policy, the term "structure" is used to refer to things that are not buildings. For example, the policy provides that the insured may use up to 10% of the Coverage A limit for costs incurred as a result of the enforcement of a law or ordinance requiring the demolition of a covered "building or other structure." Doc. no. 22-2 at 16. It also provides that coverage is not available for loss caused by freezing to a "structure . . . that supports all or part of a building." Id. at 17. In the "Conditions" section of the policy, the policy states that covered losses to "[s]tructures that are not buildings" are settled "at actual cash value at the time of loss but not more than the amount required to repair or replace." Id. at 33. Thus, the Harveys' interpretation is inconsistent with the policy as a whole.

Moreover, while the Harveys' interpretation would result in more favorable coverage to the insureds in this case, it would eliminate coverage in other cases. If, as the Harveys contend, only buildings are "other structures" within the meaning of the policy, then loss caused by damage to swimming pools, driveways, fences, swing sets, and other common household fixtures would not be covered by Coverage B. But courts routinely hold that such losses are covered as damage to "other structures" under materially identical coverage parts. See, e.g., Jones, 552 F. Supp. 3d at 502.

Because a reasonable insured would understand that damage to a stone wall is covered under Coverage B, the Harveys' interpretation, which would exclude such coverage, is not reasonable.

For these reasons, there is no genuine dispute of material fact that the Harveys' stone wall is a "detached structure with a replacement cost exceeding $1,000," such that Union Mutual did not violate its contractual obligations by failing to increase the coverage limit for Coverage A by the amount of the coverage limit for Coverage B.

II.   The Policy May Be Reasonably Construed to Entitle the Harveys to the Immediate Payment of the Replacement Cost of Individual Items of Personal Property Valued at Less Than $500

The court next considers the Harveys' claims for the replacement cost of individual items of personal property valued at less than $500. Union Mutual asserts that the Harveys are not entitled to immediate replacement cost payments because their overall personal property loss exceeds $500. The Harveys contend that the policy may be reasonably construed to permit immediate replacement cost payments for any individual item valued at less than $500.

"In the ordinary homeowner's insurance policy, there are two bases upon which an insured can recover for a loss: actual cash value and replacement cost." Cook v. USAA Cas. Ins. Co., No. 1:16-cv-207-JCN, 2020 WL 556394, at *8 (D. Me. Feb. 4, 2020). Actual cash value is the "actual worth of the property in money, after allowing for depreciation, or stated in other terms, the property's actual cash value in an undamaged condition." 12 Jordan R. Plitt et al., Couch on Insurance § 175:19

(3d ed.). By contrast, replacement cost is the cost to replace the insured property, which may be greater than the property's actual cash value. Travelers Indem. Co. v. Armstrong, 442 N.E.2d 349, 352 (Ind. 1982).

Coverage C of the policy covers losses to "personal property owned or used by an 'insured.'" Doc. no. 22-2 at 11. The Conditions section of the policy originally covered personal property loss "at actual cash value at the time of loss." Id. at 22. However, the policy is amended by an endorsement entitled "Personal Property Replacement Cost Loss Settlement." Id. at 47. That endorsement provides that "[c]overed losses" to personal property subject to Coverage C "are settled at replacement cost at the time of the loss." Id. But, pursuant to a "Replacement Cost Loss Settlement Condition" contained in the endorsement, "[i]f the cost to repair or replace the property . . . is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete." Id. Once the repair or replacement is complete, the insured may receive the difference between actual cash value and replacement cost, "provided you notify us, within 180 days after the date of the loss, of your intent to repair or replace the damaged property." Id.

The Harveys contend that the $500 threshold triggering actual cash value payments may be reasonably construed to apply on an item-by-item basis. According to the Harveys, the limitation on receiving an item's replacement cost prior to replacement can be reasonably interpreted as applying to pieces of personal property worth over $500, but not items individually valued at $500 or less. Union

Mutual disagrees, asserting that the condition's applicability is unambiguously determined by the aggregate loss of all personal property. Thus, Union Mutual argues, if the overall loss of personal property is over $500, the insured may not receive the replacement cost for their property until repairs or replacements are complete.

The endorsement "make[s] clear that personal property loss over $500 is paid at actual cash value (which takes depreciation into account) until such property is replaced or repaired and a replacement loss claim is made." Vargo v. State Auto Mut. Ins. Co., No. 4:09CV2304, 2011 WL 31116, at *7 (N.D. Ohio Jan. 5, 2011) (construing identical provision). However, it does not appear that the New Hampshire Supreme Court has had occasion to consider whether similar thresholds triggering interim actual-cash-value payments for personal property loss are measured on an item-by-item basis or by the overall loss to all covered items of personal property. Nationally, there is a paucity of authority addressed to this issue. The court has located only two cases squarely on point. See Dieudonne v. United Prop. & Cas. Ins. Co., Civ. No. 19-12476, 2021 WL 4476782, at *6 (E.D. La. Sept. 30, 2021); Yancey v. Auto. Ins. Co. of Hartford, No. C11-1329RAJ, 2012 WL 12878687, at *7 (W.D. Wash. Oct. 23, 2012).

In Dieudonne, the Eastern District of Louisiana considered whether a materially identical $500 actual-cash-value-payment threshold for personal property loss should be applied "on an item-by-item basis," or whether actual cash value "is the proper payment on a loss to personal property that exceeds $500 in the

13

aggregate." 2021 WL 4476782, at *6. In a brief analysis, the court found that the endorsement was not ambiguous and that the "aggregate theory best conforms to the object of the contract." Id. The court construed the policy's other provisions regarding replacement cost to "reflect [the insurer's] preference to pay replacement cost only upon actual replacement." Id. Thus, "it is only for small personal property losses (at or under $500) that that preference gives way to the 'administrative convenience of quickly resolving small claims' at [replacement cost value] without proof of actual replacement." Id. (quoting Yancey, 2012 WL 12878687, at *7). However, although the court explained why it believed its interpretation to be correct, it did not explain why the insured's item-by-item interpretation of the endorsement was unreasonable.

The Western District of Washington considered another actual-cash-value-payment threshold in Yancey, though that provision differed materially from the provision in the Harveys' policy. In Yancey, the provision stated that, "[w]hen the cost to replace or repair an article or articles is more than $2,000, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete." Yancey, 2012 WL 12878687, at *7 (emphasis added). As applied to that specific language, the court found the item-by-item interpretation unreasonable because it would render the words "or articles" superfluous. Id. The court concluded that the intent behind the inclusion of "or articles" in the provision was "to cover both situations where a single article is worth more than $2,000 and situations

where the aggregate value of articles (individually worth less than $2,000) exceeds $2,000." Id.

Although the insured in Yancey highlighted that the policy had a $1,000 deductible such that the aggregate approach would require the insurer to pay "replacement cost regardless of replacement only . . . where the aggregate replacement cost is between $1,000 and $2,000," the court did not find anything "suspect about this aspect of the Policy." Id. "The replacement costs provisions of the Policy, for both real and personal property, reflect [the insurer's] preference to pay replacement cost only upon actual replacement." Id. "For small personal property losses (worth less than $2,000), [the insurer's] preference apparently gave way to the administrative convenience of quickly resolving small claims." Id.

On the other hand, at least one court has suggested (without concluding) that the item-by-item interpretation is reasonable. See Hudgins v. Travelers Home & Marine Ins. Co., Civ. No. 11-882, 2013 WL 3949208, at *9-11 (E.D. Pa. July 31, 2013). In Hudgins, the homeowners' policy contained a materially identical "Personal Property Replacement Cost Loss Settlement" endorsement to the endorsement in the Harveys' policy, with the exception that the Hudgins threshold was $2,500 rather than $500. Id. at *9-10. The insured claimed that the insurer breached the implied covenant of good faith and fair dealing by aggregating her personal property losses to trigger the $2,500 threshold instead of making immediate replacement cost payments for individual items of personal property valued at less than $2,500. Id. at *10. Success on the insured's bad faith claim

required her to demonstrate that the insured's aggregate interpretation was "[a]n unreasonable interpretation of the policy." Id. at *9 (quoting Smith v. Allstate Ins. Co., 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012)). The insurer moved for summary judgment, claiming that its aggregate interpretation was reasonable as a matter of law. Id. at *10-11.

Although the court ultimately ruled that a jury would find the insurer's interpretation reasonable, it also concluded that the "plaintiff's reading is not entirely unfounded." Id. at *11. The court highlighted that the endorsement "refers to 'covered losses' in the plural, which supports a reading that loss is not considered in the aggregate; instead, the destruction of each item of property is considered a loss." Id. In addition, the endorsement stated that the insurer "will not pay more than the actual cash value for the 'loss' (singular)," which, the court said, "links the $2,500 threshold to loss of a single item, rather than an aggregation of all the losses." Id. Ultimately though, the court did not decide whether the insured's interpretation was reasonable because its only task was to "determine whether plaintiff has adduced enough evidence such that a jury could find, by clear and convincing evidence, that [the insurer's] interpretation . . . was 'unreasonable.'" Id. Because the policy language was not so clear "as to firmly preclude [the insurer's] interpretation or render it unreasonable," the court granted the insurer's summary judgment motion as to the insured's bad faith claim. Id.

In this case, as in Hudgins, the court's task is not to "definitively construe" the policy. Id. Rather, it is to determine whether the language at issue is subject to

more than one reasonable interpretation. <u>See</u> <u>CC 145 Main, 176 N.H. at 100</u>. If it is, and if one of those interpretations favors coverage, the court will apply the more favorable interpretation "in order to honor the insured's reasonable expectations." <u>Id.</u>

Assuming without deciding that the insurer's interpretation is reasonable, the court concludes that the Harveys' interpretation is reasonable too. The endorsement is silent as to whether the $500 threshold is applied on an item-by-item basis or an aggregate basis, but it contains language that could lead a reasonable insured to conclude that he will receive immediate replacement cost payments for items of personal property valued at less than $500, instead of being required to replace a lost item before receiving a replacement cost payment.

For example, the Replacement Cost Loss Settlement Condition states that, for "all property" that the endorsement permits to be "settled at replacement cost at the time of the loss," if the "full cost of repair at the time of loss" is less than replacement cost, the insurer "will pay no more than" the cost to repair. Doc. no. 22-2 at 47. A reasonable insured could read this Condition as meaning that, if he made a claim for the loss of two items and one of those items could be repaired for less than the cost of replacement, the insurer would tender repair costs for that item and replacement cost for the other. In other words, a reasonable insured would conclude that the availability of replacement cost payments is determined on an item-by-item basis.

In addition, Section A of the endorsement provides that, if certain specified "articles . . . of property . . . are separately described and specifically insured in this policy," loss to those separately listed and insured "articles" will also be settled at replacement cost. Id. Sections A.2.a through A.2.f then list the different "articles" that, if specifically insured under the policy, may be settled at replacement cost. But then, in the Replacement Cost Loss Settlement Condition, the endorsement states that, "[f]or loss to any item described in A.2.a [through A.2.f]," if "the limit of liability that applies to the item" is lower than its replacement cost, the insurer will only pay that limit of liability for "the item." Id. Again, a reasonable insured would read this language as requiring the availability of replacement cost payments to be determined on an item-by-item basis.

Underscoring the reasonableness of the Harveys' interpretation is the policy's deductible, which is $500. Given that deductible, if the availability of immediate replacement cost payments is determined by the aggregate value of lost personal property instead of on an item-by-item basis, then there would be no circumstance in which the Harveys ever received an immediate replacement cost payment.[5] Since the Harveys' coverage does not apply until they have met their deductible, their eligibility for coverage necessarily implies that their aggregate loss exceeds $500. But the endorsement contemplates that the Harveys will be entitled to immediate replacement cost payments in at least some circumstances. The "usual rule" of

---

[5] This distinguishes the Harveys' policy from the policy at issue in Yancey, where the deductible was $1,000 and the threshold was $2,000. See Yancey, 2012 WL 12878687, at *7.

insurance policy interpretation is "that effect is to be given to all the clauses of" the policy whenever reasonably possible. Newell v. Markel Corp., 169 N.H. 193, 196 (2016) (quoting Shelby Mut. Plate Glass & Cas. Co. v. Lynch, 89 N.H. 510, 512 (1938)). The Harveys' interpretation does so, but Union Mutual's interpretation does not.

Union Mutual argues that the threshold is unambiguously tied to the insured's aggregate loss because it states it is triggered when the cost to replace "the property" is more than $500. Doc. no. 22-2 at 47. According to Union Mutual, the phrase "the property" unambiguously refers to all personal property in the aggregate. While that may be one reasonable conclusion, an insured could also read the threshold's repeated use of the singular form ("the cost"; "the property"; "the loss") as reflecting its applicability to singular items. Doc. no. 22-2 at 47; see Hudgins, 2013 WL 3949208, at *11; see also Keene Auto Body, 175 N.H. at 508 ("When the context could cause a reasonable insured to expect narrow application of a policy provision, we will honor that reasonable expectation in the absence of specific language to the contrary.").

Union Mutual also contends that the item-by-item interpretation yields absurd results and will permit insureds to regularly obtain replacement cost payments prior to replacement so long as they painstakingly itemize each damaged piece of property (e.g., claiming each piece of silverware in a set instead of the set itself). The court sees nothing absurd about an interpretation of an insurance policy that permits an insured to more easily obtain the replacement cost of lost personal

property prior to the property's replacement. Indeed, many average homeowners will lack the funds to replace a lost piece of personal property without a replacement cost payment—especially when their home has burned to the ground and they must replace everything inside. In any event, to the extent Union Mutual believes the item-by-item interpretation leads to unintended results, it was incumbent on Union Mutual, as the drafter of the endorsement, to unambiguously set forth that the actual-cash-value-payment threshold is triggered by the insured's aggregate loss. See Santos v. Metro. Prop. & Cas. Ins. Co., 171 N.H. 682, 686 (2019) (explaining that the rule that ambiguities are construed against the insurer "is rooted in the fact that insurers, as drafters of their policies, have a superior understanding of the terms they employ").

For these reasons, the court concludes that an average insured could reasonably construe the policy language at issue as entitling the insured to immediate replacement cost payments for covered losses to pieces of personal property individually valued at $500 or less. Union Mutual therefore fails to demonstrate the absence of a genuine dispute of material fact that it did not breach its contractual obligations by failing to make such payments.[6]

III.    Declaratory Relief

As noted, the Harveys' operative complaint seeks a declaratory judgment that the stone wall is not a "detached structure" and that the policy entitles the Harveys

---

[6] Although there does not appear to be any dispute that, if the item-by-item interpretation applies, Union Mutual breached its contract with the Harveys, the Harveys have not filed a motion for summary judgment.

to replacement cost payments prior to replacement for items of personal property individually valued at $500 or less. Union Mutual moves for summary judgment with respect to the Harveys' entitlement to declaratory relief on these issues. In light of the foregoing analysis, the court concludes as a matter of law that the Harveys are not entitled to a declaratory judgment in their favor regarding the stone wall. However, Union Mutual fails to demonstrate that the Harveys are not entitled to a declaratory judgment in their favor regarding immediate replacement cost payments.

IV.    Next Steps

Trial in this matter is currently scheduled for the two-week period beginning February 18, 2026. In light of the court's ruling herein, the Harveys' decision not to seek summary judgment, and the court's prior order concerning Union Mutual's demand for appraisal and the Harveys' motion to amend (doc. no. 23), the court understands that the following claims remain live in this case:

- Count I: Breach of contract, premised upon Union Mutual's failure to tender replacement cost payments for covered losses to personal property individually valued at $500 or less;

- Count II: "Declaratory Judgment," insofar as the Harveys seek a declaration that the policy obligates Union Mutual to tender immediate replacement cost payments for covered losses to personal property individually valued at $500 or less; and

- Count III: "Bad Faith Breach of Insurance Contract."

Doc. no. 24 at 11. If either party believes the court's understanding is incorrect, the party may raise its contrary understanding in its pretrial filings.

21

## CONCLUSION

Union Mutual's motion for partial summary judgment (doc. no. 22) is granted in part and denied in part as set forth herein.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 8, 2026

cc:    Counsel of Record